**Counsel of Record:**
**Judson T. Mihok**
**Gregory R. Bockin**
**Sarah Damiani**
**Julia C. Green**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**Philadelphia Regional Office**
**1617 JFK Boulevard, Suite 520**
**Philadelphia, PA 19103**
**Phone: 215-597-6500**
**Fax: 215-597-2740**
**Email: MihokJ@sec.gov**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br><br>        **Plaintiff,** <br><br>   **v.** <br><br> **TODD O'GARA,** <br><br> **and** <br><br> **WANU WATER, INC.,** <br><br>       **Defendants.** | **CIVIL ACTION NO.** <br><br> <u>**COMPLAINT**</u> <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission (the "Commission" or the "SEC"), One Penn Center, 1617 JFK Boulevard, Suite 520, Philadelphia, Pennsylvania 19103, alleges as follows against Defendants Todd O'Gara ("O'Gara"), whose last known address is 6104 Old Fredericksburg Road, Unit 91269, Austin, TX 78749, and Wanu Water, Inc., ("Wanu"), 98 San Jacinto Blvd., Suite 400, Austin, TX 78701.

**SUMMARY**

1.      This case involves an offering fraud scheme conducted by O'Gara through Wanu, a nutrient-infused water brand he controlled. From at least January 2019 to August 2024 (the "Relevant Time"), O'Gara and Wanu raised at least $10.3 million from more than 50 investors through the fraudulent offer and sale of securities issued by Wanu.

2.      During the Relevant Time, Defendants made material misrepresentations to investors by: (1) overstating the size of Wanu's deals with a prominent wholesale retailer ("Retailer"); (2) falsely claiming that at least two private equity firms had promised large investments; (3) misrepresenting O'Gara's personal wealth and credentials; and (4) misrepresenting how Wanu would use investors' money. In connection with these misrepresentations, Defendants knowingly deceived investors by using fabricated term sheets, emails, bank records and other documents. As a result of Defendants' conduct, investors lost millions of dollars.

3.      By engaging in the conduct described in this Complaint, Defendants violated, directly or indirectly, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act" [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

**JURISDICTION AND VENUE**

4.      The Commission brings this action, and this Court has subject matter jurisdiction over this action, pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

5.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because a substantial part of the acts or omissions that give rise to claims alleged in this Complaint occurred in this District—namely, that interstate wires traveled to/from a bank located in New Jersey. In addition, Defendant made misrepresentations in connection with the sale of securities to an investor who resided in Cresskill, Bergen County, New Jersey.

6.      In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, in connection with the acts, transactions, practices, and courses of business, have made use of the means and instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and/or the mails—namely, through Defendants' use of the Internet when engaging in the acts and transactions described herein, as well as bank wires and the facilities of a national securities exchange.

## **DEFENDANTS**

7.      **Todd O'Gara**, age 45, is the founder and CEO of Wanu. O'Gara owns 40% of the company.

8.      **Wanu Water, Inc.**, is a Delaware corporation with its principal place of business in Austin, Texas. Wanu promoted itself as a nutrient-infused water company that bottled and sold its product to prominent retailers. For all conduct described herein, Wanu acted by and through O'Gara.

## FACTS

### A. Background

9.      O'Gara formed Wanu in 2012. O'Gara was the sole founder and CEO of Wanu. He exerted control over the operations of Wanu and had ultimate authority over its statements. Further, O'Gara acted on behalf of the company. By 2017, Wanu's product, Wanu Water, a bottled beverage purported to be nutrient-infused water, was sold both in stores and online.

10.     At its height in 2018, Wanu had about two dozen employees.

11.     By 2019, Wanu was losing money and projecting losses.

12.     By 2022, Wanu had just six employees.

13.     Between 2022 and 2024, Wanu generated less than $150,000 in revenue. This required Wanu to rely on $5.1 million collected from investors to maintain Wanu as a going concern.

14.     By January 2024, Wanu was no longer generating any income from operations.

### B. Defendants Offered and Sold Securities to Investors

15.     From January through August 2024, O'Gara and Wanu raised approximately $10.3 million from about 50 investors in 15 states.

16.     While some investors signed subscription agreements and received preferred stock at the time of their investments ("Preferred Stock"), others signed "Preferred Shareholders Demand Notes" ("Demand Notes"). The Demand Notes came in different forms, but all provided for an equity conversion at a specified time. In some cases, the conversion was tied to a date certain, while others were tied to the happening of a specific event (e.g., "Upon the closing of a deal with a major stockholder in wanu water inc."). Defendants treated all investments as capital

contributions resulting in stock issuance (either initially or as convertible equity) whether investors received Preferred Stock or Demand Notes.

**C.    Defendants Deceived Investors in Soliciting Investments**

17.    During the Relevant Time, Defendants knowingly deceived investors in a number of areas.  Defendants: (1) overstated Wanu's anticipated revenue from Retailer; (2) falsely claimed that Wanu was in negotiations with two private equity firms that had promised large investments; (3) misrepresented O'Gara's personal wealth and credentials; and (4) misstated how Wanu would use investors' money.

i.    Defendants Overstated Wanu's Revenue from Retailer

18.    In 2017 and 2018, Wanu grossed approximately $300,000 from sales to Retailer.

19.    Wanu did not generate any revenue from sales of its product to Retailer in 2019.

20.    In early 2020, Wanu's Vice President of Sales exchanged emails with a buyer for Retailer about potentially putting Wanu's product back in Retailer stores in Texas and the Midwest. Via email, the buyer for Retailer noted that he planned to discuss the matter with Retailer management at a meeting scheduled for January 28, 2020.

21.    On January 28, 2020, the buyer for Retailer emailed Wanu's Vice President of Sales that the meeting had been cancelled and "We will present next week (Tuesday)" ("the January 28, 2020, Email").

22.    On March 11, 2020, Retailer placed two purchase orders for Wanu Water totaling approximately $73,000. Retailer received the product associated with these orders in early May 2020.

23.    Later in May 2020, Retailer also received two additional shipments from Wanu totaling approximately $37,000.

24.    These shipments together amounted to $110,000 of product shipped to Retailer in 2020. Wanu did not receive any additional purchase orders from Retailer or ship any additional product to Retailer for the balance of 2020 through 2024.

a.    *Defendants materially misstated Wanu's business with Retailer to Investor A*

25.    Notwithstanding the limited actual business Defendants did with Retailer, they overstated business with Retailer to at least two investors.

26.    On January 23, 2020, O'Gara emailed Investor A that he felt Investor A "would be a welcome addition to the preferred class." In the email under "Key points," O'Gara wrote "[Retailer] expansion from 29 stores to north of 120 in the first week of January."

27.    As of January 23, 2020, Wanu had not generated any revenue from sales of its product to Retailer since 2018.

28.    Investor A invested $250,000, an additional $250,000, and then $200,000 on March 18, 2020, March 31, 2020, and June 30, 2020, respectively.

b.    *Defendants materially misstated Wanu's business with Retailer to Investor B*

29.    On January 29, 2020, O'Gara emailed an altered version of the January 28, 2020, Email to Investor B. In this altered version, the Retailer buyer appeared to have written that though the meeting was cancelled, "*The PO will be for 20 truck loads of product ,*[sic] *3 sku's as we discussed. We will send next week (Tuesday)*" (altered/added language in italics)

30.    The email was further altered to add, "20 truck loads of product is :[sic] 26 pallets per truck  [sic] x 20 truckloads +~ $734,448 purchase order from Texas division buyer."

31.    Investor B invested $50,000 on June 24, 2020.

32.    O'Gara repeated this material misstatement to other investors. For example, in February 2020, he emailed yet another investor that Wanu's purchase orders will exceed $1 million due to a $700,000 purchase order from Retailer.

33.    O'Gara and Wanu continued to misrepresent Wanu's relationship with Retailer even after Wanu was no longer doing any business with Retailer.

34.    In an April 2021 Founder's Letter from the "Wanu Team," Retailer was listed as a current retailer.

35.    As of April 2024, Wanu continued to tout an apparent relationship with Retailer in marketing materials by including a picture of Wanu outside a Retailer store.

ii.    O'Gara Falsely Claimed Private Equity Firms Were Investing in Wanu

36.    On August 30, 2019, O'Gara met with two partners from a private equity firm ("Private Equity Firm A"). On September 6, 2019, Wanu and Private Equity Firm A entered into a nondisclosure agreement (NDA) to allow for the exchange of information.

37.    Beginning on September 12, 2019, and continuing for approximately two weeks, O'Gara and Wanu's Chief Operating Officer exchanged emails with a representative of Private Equity Firm A.

38.    On October 16, 2019, Private Equity Firm A sent O'Gara and Wanu's COO an email that Private Equity Firm A decided not to invest in Wanu as it was just too early stage and too small, but indicated a potential future interest if Wanu's growth was sufficient to merit consideration from Private Equity Firm A.

39.    Between October 2019 and October 2021, O'Gara sporadically contacted Private Equity Firm A to update Private Equity Firm A on Wanu's business, and once to send a sample of its product, but Wanu and Private Equity Firm A never exchanged draft term sheets.

40.     On October 15, 2021, Private Equity Firm A again told O'Gara that Private

Equity Firm A had decided not to invest, reiterating the message sent two years earlier.

> a.     *Defendants provided fabricated term sheets and falsely claimed*
> *that negotiations were ongoing with Private Equity Firm A*

41.     Despite knowing that Private Equity Firm A had chosen not to invest in Wanu as

of October 2019, O'Gara used Private Equity Firm A's potential investment as a selling point to

investors.

42.     In late January 2020, O'Gara emailed Investor A writing, "We feel you would be

a welcome addition to the preferred class . . . . Key points: . . . the term sheet from [Private

Equity Firm A] due to a Brazilian family office offering $6.5 million to close the round out., we

were able to leverage [Private Equity Firm A] to raise the valuation to $40 million. I am able to

still sell some equity at the $30 million valuation prior to signing the [Private Equity Firm A] PE

term sheet, but would cap it at no more than $600k."

43.     On February 16, 2020, O'Gara sent a fabricated term sheet to Investor C and told

Investor C that a deal with Private Equity Firm A was imminent, and that O'Gara had a term

sheet but needed the investor's deposit as an infusion for cash reserves to make the deal

acceptable to Private Equity Firm A.  This term sheet showed Private Equity Firm A was to

make a $4 million investment in exchange for 14.91% ownership interest. This was false.

44.     On February 27, 2020, Investor C invested $250,000.

45.     On March 18, 2020, March 31, 2020, and June 26, 2020, Investor A invested

$250,000, $250,000, and $200,000, respectively.

46.     Contrary to what O'Gara told these investors, there was no deal with Private

Equity Firm A in January 2020, and Defendants were not able to leverage Private Equity Firm A

to raise the valuation of Wanu.

47.    In mid-September 2020, O'Gara told Investor D that a deal with Private Equity Firm A and a global beverage company was imminent, and that O'Gara had a term sheet but needed the investor's deposit as an infusion for cash reserves to make the deal acceptable to Private Equity Firm A.

48.    On September 24, 2020, O'Gara texted Investor D screenshots of a fabricated term sheet with Private Equity Firm A.

49.    Investor D and several of his family members provided a combined $750,000 investment about a week later.

50.    In May 2021, O'Gara emailed Investor E a fabricated term sheet dated May 10, 2021, that showed a $10 million investment by Private Equity Firm A and a global beverage company at $4 per share, assuming a valuation $105 million.

51.    Investor E invested $75,000 less than three weeks later.

52.    This fabricated May 2021 term sheet included a falsified signature of Private Equity Firm A's Chief Operating Officer.

   b.    *Defendants falsely claimed that Private Equity Firm B had valued Wanu at $300 million as part of a deal to acquire Wanu*

53.    On July 8, 2022, Wanu provided promotional materials to a private equity firm ("Private Equity Firm B"). A few days after receiving Wanu's promotional materials, an adviser to Private Equity Firm B told O'Gara that Private Equity Firm B was not interested in investing in Wanu.

54.    In summer 2022, O'Gara told Investor F that Wanu was being sold to an investment group and Private Equity Firm B was underwriting the investment. Further, O'Gara told Investor F that Private Equity Firm B gave Wanu a $300 million valuation.  O'Gara knew both statements were false.

55.     On July 25, 2022, Investor F provided Wanu $350,000 representing his first of five investments in Wanu. Between July 25, 2022, and January 9, 2023, Investor F, both via his personal and corporate accounts, invested more than $1.5 million in Wanu.

56.     O'Gara knew the information he told investor F was false.  Private Equity Firm B was not underwriting any purchase of Wanu, and Private Equity Firm B never provided any valuation of Wanu, let alone a $300 million valuation.

             iii.     <u>Defendants Misrepresented O'Gara's Credentials and Personal Wealth</u>

                a.     *Defendants misrepresented that O'Gara was a dentist*

57.     In soliciting investments, Wanu claimed that O'Gara was a dentist or a doctor. In an early "Investor Deck" from 2017, O'Gara wrote, "In college, I had the opportunity to study abroad and travel to numerous countries around the world. These culturally diverse and integrated educational experiences had a lasting effect on my life, leading me to follow in my father's footsteps as a dentist and accept a position in the program of dental medicine at the University of Sydney, Australia."

58.     In an "Investors Deck" from July 2020, Wanu stated, "While studying Dentistry at University of Sydney in Australia, O'Gara developed an interest in bringing wellness to communities through clean water and proper education on nutrition. During his residency in South America at CS. Sarcobomba O'Gara saw first-hand the detrimental effects that the lack of access to clean drinking water had on the health of populations. Through these learnings, he initiated an innovative solution: wanu water."

59.     O'Gara's purported degree and background as a dentist or doctor was material to investors' decision to invest in Wanu.

60.     These claims were false. O'Gara is neither a dentist nor a doctor.

b.    *O'Gara misrepresented his personal wealth*

61.    During the Relevant Time, O'Gara told investors that his family managed $6 billion in assets and that he was set to inherit $1 billion.

62.    During the Relevant Time, O'Gara showed numerous investors a fabricated screenshot of an account statement showing over $700 million and represented it was his account.

63.    O'Gara provided an investor with a false email, dated July 23, 2021, purportedly from Bank of America notifying O'Gara of a $125 million deposit into his personal account.

64.    O'Gara provided another investor a fabricated wire receipt purportedly displaying a deposit of $750,891,000 into O'Gara's personal account at Bank of America on September 30, 2022.

65.    O'Gara provided another investor a false Bank of America email, dated July 26, 2023, purportedly indicating an $11 million deposit.

66.    O'Gara used his apparent wealth to support personal guarantees of the Demand Notes that Wanu offered.

67.    O'Gara's personal wealth coupled with personal guarantees were material to investors' decision to invest in Wanu.

68.    All of these bank records and emails described herein were falsified. In July 2021, O'Gara did not receive a wire in his personal account of $125 million. O'Gara's total balance in this personal account ranged from approximately $8,214 to $102,953.

69.    In September 2022, O'Gara's personal account did not receive a wire of $750 million. In fact, the two largest deposits he received that month were $75,000 each. And his account balance in September 2022 never exceeded approximately $109,477.

70.     O'Gara did not receive an $11 million deposit in July 2023.  On July 6, 2023, one of O'Gara's relatives provided him with $58,000, which represented the largest deposit of the month.

        iv.     Defendants Lied to Investors About How Wanu Would Use the Money From Their Investments

71.     During the Relevant Time, Defendants repeatedly lied to investors about how their money would be used. At times, O'Gara told investors that he needed their money to complete a production run, or as an infusion for cash reserves to close the deal first with Private Equity Firm A, or later with Private Equity Firm B. In reality, O'Gara did not use investors' money for a production run or to close deals with private equity firms. O'Gara used investor money to pay back earlier investors and relied on investor money simply to meet payroll and other basic operating expenses. He also moved money back and forth between his personal accounts and Wanu's business account, and used some of the money from both accounts to pay personal expenses.

## DEFENDANTS VIOLATED THE ANTIFRAUD PROVISIONS OF THE FEDERAL SECURITIES LAWS

72.     In perpetrating the fraud, Defendants used the means or instrumentalities of interstate commerce or of the mails, or the facility of a national securities exchange, including by communicating false statements via emails and text messages.

73.     The Preferred Stock and Demand Notes offered by Wanu were securities.

74.     Defendants made materially false statements to induce investors to invest in Wanu, and perpetuated materially false statements after they had investors' money, including false statements related to Wanu's business with a prominent retailer, Wanu's negotiations with

private equity firms, O'Gara's wealth and credentials, and Defendants' use of investment proceeds. Several investors reinvested additional times after their initial investments.

75.    Defendants' misstatements (or misstatements misleading by omission) were material as there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision. A reasonable investor would have wanted to know about Wanu's sales and valuation, O'Gara's wealth and credentials, and the use of investor money.

76.    Defendants were the makers of these misrepresentations. O'Gara exerted control over the operations of Wanu and had ultimate authority over its statements. Further, O'Gara acted on behalf of the company.

77.    In addition to these and other misstatements, Defendants engaged in other deceptive conduct and acted with a high degree of scienter. O'Gara shared an email from a Retailer employee that had been altered to add language that Retailer would be sending a purchase order for 20 truckloads of product. He provided this altered email to investors and claimed it would result in approximately $734,448 in additional revenue. O'Gara shared a fabricated term sheet that included a forged signature of an executive from Private Equity Firm A and provided the term sheet to investors to legitimize his fraudulent claims. O'Gara showed investors fabricated bank statements and emails purporting to be from a bank in an effort to convince investors of his vast personal wealth that would guarantee investments against loss.

78.    These deceptive acts were designed to conceal Wanu's financial condition, as well as Wanu's and O'Gara's misconduct from investors.

79.    The fraudulent conduct occurred in connection with the purchase and sale of, and in the offer and sale of, Wanu's securities.

80.     Defendants obtained money and property by means of these misstatements.

81.     Defendants knew or were reckless in not knowing that they made material false statements to investors, including false statements related to Wanu's business with a prominent retailer, Wanu's negotiations with private equity firms, O'Gara's wealth and credentials, and Defendants' use of investment proceeds.  Defendants further knew, or were reckless in not knowing, that they were engaged in a scheme to defraud investors and further engaged in practices that operated as a fraud or deceit upon those investors by selling Wanu shares based on fraudulent disclosures.

## <u>FIRST CLAIM FOR RELIEF</u>
### Fraud in Violation of Section 17(a) of the Securities Act
### (Against Both Defendants)

82.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 81, inclusive, as if they were fully set forth herein.

83.     By engaging in the conduct described above, Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails,

      (a)     knowingly or recklessly employed one or more devices, schemes or artifices to defraud;

      (b)     knowingly, recklessly or negligently obtained money or property by means of one or more untrue statements of material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

14

(c)    knowingly, recklessly or negligently engaged in one or more transactions, practices or courses of business which operate or would operate as a fraud or deceit upon a purchaser.

84.    By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
**Fraud in Violation of Section 10(b) and Rules 10b-5 of the Exchange Act
(Against Both Defendants)**

85.    The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 81, inclusive, as if they were fully set forth herein.

86.    Defendants directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly,

(a)    employed one or more devices, schemes, or artifices to defraud;

(b)    made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c)    engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

87.    By reason of the foregoing, Defendants violated, and, unless enjoined, are

15

reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

I.

Permanently restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them from violating, directly or indirectly, the federal securities laws alleged in this Complaint;

II.

Permanently restraining and enjoining O'Gara from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in any issuance, offer, or sale of any security, provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

III.

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Section 21(d) (5) and (7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and (7)];

IV.

Ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

V.

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], permanently prohibiting O'Gara from serving as an officer or director of any company that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. §78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

VI.

Granting any other and further relief this Court may deem just and proper;

VII.

Further, the Commission respectfully requests that the Court retain jurisdiction over this action and Defendants in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court; and

VIII.

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Dated: September 15, 2025            Respectfully submitted,

                                     *s/Judson T. Mihok*
                                     Judson T. Mihok
                                     Gregory R. Bockin
                                     Sarah Damiani
                                     Julia C. Green
                                     Attorneys for Plaintiff

SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Phone: 215-597-6500
Fax: 215-597-2740
Email: MihokJ@sec.gov

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged against the

Defendant in the foregoing Complaint is not the subject of any other civil action pending in any

court, or of any pending arbitration or administrative proceeding.


Dated: September 15, 2025                 Respectfully submitted,


                                          _s/Judson T. Mihok_____
                                          Judson T. Mihok
                                          Gregory R. Bockin
                                          Sarah Damiani
                                          Julia C. Green
                                          Attorneys for Plaintiff
                                          SECURITIES AND EXCHANGE COMMISSION
                                          Philadelphia Regional Office
                                          1617 JFK Boulevard, Suite 520
                                          Philadelphia, PA 19103
                                          Phone: 215-597-6500
                                          Fax: 215-597-2740
                                          Email: MihokJ@sec.gov

**Counsel of Record:**
**Judson T. Mihok**
**Gregory R. Bockin**
**Sarah Damiani**
**Julia C. Green**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**Philadelphia Regional Office**
**1617 JFK Boulevard, Suite 520**
**Philadelphia, PA 19103**
**Phone: 215-597-6500**
**Fax: 215-597-2740**
**Email: MihokJ@sec.gov**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                              **Plaintiff,**<br><br>                       **v.**<br><br>**TODD O'GARA,**<br><br>**and**<br><br>**WANU WATER, INC.,**<br><br>                              **Defendants.** | **CIVIL ACTION NO.**<br><br>**DESIGNATION OF AGENT FOR SERVICE** |

Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action. Therefore, service upon the United States or its authorized designee, David Dauenheimer, Deputy Chief, Health Care Fraud and Opioids Enforcement Unit, United States Attorney's Office for the District of New Jersey, 970 Broad

Street, 7th Floor, Newark, NJ 07102 shall constitute service upon the Commission for purposes

of this action.


Dated:  September 15, 2025                    Respectfully submitted,


                                              *s/Judson T. Mihok*
                                              Judson T. Mihok
                                              Gregory R. Bockin
                                              Sarah Damiani
                                              Julia C. Green
                                              Attorneys for Plaintiff
                                              SECURITIES AND EXCHANGE COMMISSION
                                              Philadelphia Regional Office
                                              1617 JFK Boulevard, Suite 520
                                              Philadelphia, PA 19103
                                              Phone: 215-597-6500
                                              Fax: 215-597-2740
                                              Email: MihokJ@sec.gov